Good morning. May it please the Court, David Shaw, appearing on behalf of the appellants Austin and Worthington. This is an appeal from a grant of summary judgment by the District Court. I believe there are two issues presented for review. The first issue is whether or not Judge Zille erred in refusing to apply the doctrine of equitable estoppel on the statute of limitations. And number two, whether or not Judge Zille erred in dismissing intentional claims of outrage and intentional infliction of emotional distress when those government's summary judgment briefing, either in the initial brief or when they were pointed out as missing in our reply brief, they failed to address the issue in their response brief. What specifically is the misconduct or leading on that prevented your clients from filing in a timely manner on the statute of limitations issue? The issue really turns on whether or not Judge Zille was correct in determining that their claim was voluntary. And the conduct of the government that prevented them from filing was twofold. Number one, they, the government, told them that if you want to bring a suit against or file a claim against the government arising out of these activities, number one, you have to file it in the jurisdiction from which you entered the WCSEC program. So in order to file a claim, you have to go back to the place where we removed you from for your own personal safety. That's the only place you can consult a private lawyer to pursue a claim against the government. Well, they wouldn't consult a lawyer, though. And they, so they can't claim ignorance to that. Your Honor, that is one of the principal mistakes that Judge Zille made. They did consult a lawyer. They consulted a lawyer with respect to claims against public officials, State officials. They were absolutely prohibited from discussing a claim against the Zille, Ron Boling, was a man for all seasons. But, in fact, he wasn't. My clients could not consult with Boling regarding claims against the government. If they did, they're out of the program. And I think the error that Judge Zille made is his conclusion that their participation in the program was voluntary. Essentially, he said if they wanted to sue, they could have left the program. And we submit that that is not the choice. These people are in the program for a reason. The reason is their lives are in danger. And their lives are in danger because they participated at the request of the government in investigations that the government was conducting. So the government says you help us, we'll put you in the WITSEC program. But if something happens in the WITSEC program by the people that we have administering that program, you can't sue us unless you leave. And that, you know, Judge Zille relied very heavily, and I would suggest exclusively, on the Foss case as support for his opinion. And this is so far removed from a guy going to the South Pacific where he cannot be reached by regularly mailed notices. It's so far removed that you cannot compare them. There are a multitude of cases that support the proposition that threat of physical harm is adequate for implementation of equitable estoppel, that duress. And if you don't agree with me that the prospect of leaving the WITSEC program constitutes duress or threat to your personal safety, I mean, I don't know what I can tell you. My difficulty with your earlier comment, I guess, about going to see the local counsel, the relationship between lawyer and client is confidential. So they knew the facts that underlie their complaint. Certainly. And they knew or should have known that what they were saying to their lawyer was said in confidence. So they had, it seems to me, an opportunity at least to explore that at that time. And I guess that's the problem. Certainly. But that's a right without a remedy, Your Honor. So what? They can talk to the lawyer. What's the lawyer going to do? Is he going to file a suit? Bingo. They're out of the program. Is he going to file an administrative claim? Bingo. They're out of the program. Is he going to call the Department of Justice and discuss it? Bingo. They're out of the program. I mean, you certainly, they could talk to the guy. How long is the statute of limitations? It's two years, Your Honor. It's a Federal Tort Claim Act. Well, okay. They were terminated from the program in October 1996? Yes. So they could have filed then? Is there any reason why they couldn't have filed then? They filed within two years of their dismissal from the program. But if they'd already seen the lawyer secretly, privately, presumably they could have filed the day they were terminated. Certainly. They could have. But that's no different, Your Honor, than someone who is, for instance, underage and the statute has told if they're, let's say, 16 years and a day, when they turn 18, they don't have just a day to file. They have either the whatever the statute of limitations period is or a specific period set out in the What I'm saying is that the statute of limitations was told until the time they left  Left the program. And they would have two years. Well, just once more, explain to me why this is different than any other employee   something wrong in the terms of the employment. They couldn't file the suit then because they would disclose their identity? Is that the Essentially, yes. I mean, they couldn't really do it without They would be out of the program, essentially. And the purpose of the program was to protect them. Okay. And the other issue that I would like to discuss briefly is the fact that there The second issue that I talked about, which was the failure of the government to move on the outrage and intentional infliction of emotional distress claim. And I the reason it's important that it wasn't briefed, that I didn't have an opportunity to brief it is because there are other issues. I think what Judge Zilley was focusing on was what happened in Kentucky. Those are the facts. But there are other facts involved in their relationship with the government. And in particular, and this is from the testimony of Marshall Berry, who had they were in his charge while they were in Seattle, that because they had filed multiple grievances against Marshall Goldman in Kentucky, my client was refused child support or visits with his children that not only had been promised by the Marshall service, but were provided in visits with his children. And in particular, this Marshall's experience to other individuals similarly situated, clearly intentional, but quite apart from what happened in Kentucky. And had I had an opportunity to discuss that issue in the briefing, that would have been brought out. And I believe This is not briefed, though. I'm sorry? The point that you're making is not briefed. It wasn't briefed, and I didn't have an opportunity. Okay. I think my time is up, Your Honor. Thank you. Thank you. May it please the Court. Teal Luthie Miller from the Department of Justice on behalf of the United States. In response to your question about whether they could have consulted local counsel in Lexington, Kentucky, with whom they were working on a suit against the local government officials arising out of the same events. Could you keep your voice up, please? Certainly, Your Honor. I'm sorry. Counsel said they could have, but it would have been futile, and a right without a remedy is no right. I think that ignores the fundamental purpose of the administrative exhaustion requirement, which is the requirement they're suggesting was a stop, or the government is a stop from asserting this case. The purpose of an administrative exhaustion requirement is not to let someone to go to investigate the claim and possibly settle it before a suit is filed. So even if they're right that at some point down the road, and they haven't shown this and they bear the burden of proof on estoppel, even if they're right that at some point down the road it might have theoretically caused them problems to bring a suit against the marshal service, they have to show that they exhausted the claim and they just acknowledged that they had counsel to whom they could have asked in general terms, what do I need to do to preserve an administrative claim against the government? Was that — did the district court rule on that ground? And is this — The district court took into consideration the fact that they had counsel in Lexington, Kentucky, whom they could have consulted with. Basically, he said, they assert that they were told they had to go to Boston, and they assert that that meant it impossible to bring a claim. However, I don't believe that because they had counsel. And I'm not going to argue that. And you're arguing failure to exhaust. Yes. Did the district court rule on the failure to exhaust question? Yes, actually, that's the issue. That's what they're trying to have told. They didn't file an administrative claim under 2675. Is that what's trying to be told or the actual filing of a complaint? It's very confusing. Well, Your Honor, I agree that there's some confusion in this case between estoppel and tolling, but they, as their briefs make clear and as our briefs make clear, in order to bring an FQCA claim, you first have to file an administrative claim, and they did not file an administrative claim until after the two-year deadline for filing an administrative claim had passed. Well, they said that if they filed an administrative claim, they would be kicked out of the program. That's right, Your Honor. They do say that, but there's no evidence that supports that. What's the answer to that? Well, the answer to that is that they filed numerous grievances during their participation in the program. They filed – they also got in contact with the inspector general to file an investigation. They were obviously very active in trying to pursue their rights. So they haven't shown that to be true. I also – I asked the marshal service in preparing for oral argument here, have participants in the witness security program sued the marshal service and were they kicked out, and they told me that there's no evidence. Well, that's not in this record. Okay. Your Honor, they bear the burden on showing estoppel. And they simply – basically, in a last-ditch effort, in a reply brief in the court of appeals, have asserted, well, even though we could have contacted our local counsel, we would have been kicked out, but they haven't shown it, and there's no proof of that. If I may, I'll turn to the merits very briefly. The – Well, I guess that was an alternative. If the district court is right on the time bar, we don't have to worry about any merits. That's right, Your Honor. That's right. And because the time bar under the FTCA is jurisdictional, I think you probably need to reach that question. On the merits, as counsel has just made clear, the only issue that they've appealed from the summary judgment ruling is whether their outrage and intentional infliction of emotional distress from the incidents arising in Kentucky were properly part of the district court's summary judgment. And the district court stated that he – I ruled that defendant did move on all claims, and to the extent that plaintiffs seek intentional infliction of emotional distress or outrage arising out of the first two events, that is, the Lexington events and the Florence raid, these are the Kentucky incidents, they haven't come up with any evidence that would support liability. But, counsel, the district court first dismissed this on the pleadings, as I understand it. Your Honor, the district court, on a motion to dismiss, transferred some claims to the Federal – the court of Federal claims. Those claims arising out of the essentially contractual relationship of the memorandum of understanding. And I think some of the claims counsel just referenced actually probably are part of what was dismissed on the motion to dismiss. But to the extent the outrage and intentional infliction of emotional distress are – arise out of this conspiracy theory that the marshal service somehow put local officials up to arresting and investigating plaintiffs, the district court's reasoning for rejecting the other torts is the same, applies the same to this. There's just – there's simply no evidence under the Anderson v. Liberty lobby standard for summary judgment. There's no evidence beyond their hearsay and their own supposition. Well, I am – I guess I'm sorry. Are we here on the merits of these claims, or are we here on a statute of limitations exhaustion question? We're on an – here on an administrative exhaustion question principally. And the district court's judgment can be affirmed in full on that basis. I just, because the present counsel mentioned the merits, thought I would like to add. Okay. Well, I want to stick with what the district court did here. What – Oh, he ruled in the alternative. He did rule on the merits as well with these claims that I'm talking about. So there were two basics. He said in the alternative, if the court of appeals disagrees with me about estoppel and tolling, I dismiss – he dismissed part of the case. But you're right. The whole case, the district court's judgment can be affirmed on the basis of estoppel and tolling. So is part of the underlying case now with the court of Federal claims? There was a motion to – there was an order transferring some of the claims to the court of Federal claims. I don't actually know what's happening. So as far as we're concerned, they're gone? Yes. That's right, Your Honor. Well, I guess I just wish somebody would explain to me. They're in the Witness Protection Agency, or in program. And the claim is that they couldn't file an administrative claim because it would blow their cover. What is the answer to that? What is the – is there evidence in the record? We can't just judicially notice the fact that it won't blow their cover. Your Honor, that isn't their claim. Their claim is that they were told if you'd like to pursue this action, you have to go to Boston to do it. So they were never told, and there's no record to support the suggestion that they were told, sorry, you may not sue at all. Well, I thought there was also a claim that they were told if you bring – if you file a claim like this, we'll kick you out of the program. Out of the program, yes. Which is, they're saying, tantamount to saying we're going to throw you to the wolves because the reason they were in the program is to avoid the mob. This Court's questions make clear that contradictory allegations are not a basis for surviving summary judgment, and there's a contradiction between being told you can't sue at all and you can sue but you have to go to Boston. And I think the district court reasonably said, wait a minute, so the assertion here is – Let's assume this is the only assertion. That's the – it doesn't help you very much, because you are always allowed to plead in the alternative. So wait, let me just finish the question. The question is, assuming that's the only assertion, let's assume that the only thing they said was we were told the only way we could file a claim is to leave the program and put ourselves at risk. What is the factual answer to that question, and what is the legal answer to that question, leaving aside whether there's some potentially contradictory theory as well? Your Honor, I think they acknowledge in their briefs that they were told they had to go to Boston. I don't mean to be – Please don't walk out of the – out of my question. Then the legal answer – Okay. It didn't help. The legal answer is, I think, the one you pointed to in your questioning of opposing counsel, which is that there was a 14-month period from when they left the program to when they filed their suit. And although this Court said in the – I believe in the Santa Maria case that equitable tolling is a period that begins and ends – having a gap during which you could have filed doesn't mean that you lose an equitable tolling defense. This Court has never said that about equitable estoppel. And, indeed, the basis for equitable estoppel is different than the basis for equitable tolling, and they should be treated differently under that. So if I can paraphrase your answer, are you saying that because there was such a long period of time after they were already out of the program anyway that it doesn't get them very far to say that the threat was they'd be out of the program because they were out of the program? That's one of my answers, yes. My other answer is that they had counsel, and they could have consulted with that counsel in general terms and asked what they had to do to preserve the claim. And if you look at page 139 and 140 of Mr. Austin's deposition, he admits that when he was told you have to go to Boston, what he did was he called the AUSA and the FBI, who he dealt with in Boston, and asked them, what about this? And they said this didn't seem fair. So the district court really felt that they hadn't actually proven the alternative theory that you've asked me to address. Okay. Any further questions? All right. Thank you. Thank you. The case just argued is submitted for decision. We'll hear the next case, which is Ryerson v. Barnhart.
judges: Schroeder, Goodwin, Graber